**No. 25-1279**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PFLAG, INC., et al.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court for the District of
Maryland Case No. 25-cv-337-BAH

## BRIEF OF AMICI CURIAE PUBLIC CITIZEN
## AND INSTITUTE FOR CONSTITUTIONAL ADVOCACY
## AND PROTECTION IN SUPPORT OF
## PLAINTIFFS-APPELLEES AND AFFIRMANCE

Joseph W. Mead
William Powell
Institute for Constitutional
  Advocacy and Protection
Georgetown Law
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-9765

Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Amici Curiae Public Citizen
and Institute for Constitutional Advocacy and Protection*

September 26, 2025

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1279</u>        Caption:  <u>PFLAG, Inc., et al. v. Donald Trump, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Public Citizen, Inc., and Institute for Constitutional Advocacy and Protection</u>
(name of party/amicus)

_____

 who is _____<u>amici curiae</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?            ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?            ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Cormac Early                         Date: _____9/26/2025_____

Counsel for: Amici Curiae

Print to PDF for Filing

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

INTEREST OF AMICI CURIAE .......................................................... 1

INTRODUCTION .............................................................................. 3

ARGUMENT .................................................................................... 4

I.    The right of associations to seek injunctive relief on behalf of
      their members is well established. ................................................ 4

II.   *CASA* supports application of the longstanding rule, founded
      on historical practice, that associations may seek injunctive
      relief on behalf of their members. ................................................ 9

CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*6th Congressional District Republican Committee v. Alcorn*,
    913 F.3d 393 (4th Cir. 2019) ......................................................4

*Acheson Hotels, LLC v. Laufer*,
    601 U.S. 1 (2023) .....................................................................1

*Adair v. New River Plate Co.*,
    32 Eng. Rep. 1153, 1158 (Ch. 1805) ..................................12

*Advocates for Highway & Auto Safety v. Federal Motor Carrier Safety
    Administration*,
    41 F.4th 586 (D.C. Cir. 2022) ............................................8

*Alliance for Open Society International, Inc. v. USAID*,
    651 F.3d 218 (2d Cir. 2011) ...............................................8

*American Farm Bureau Federation v. EPA*,
    836 F.3d 963 (8th Cir. 2016) ..............................................5

*Americans for Prosperity Foundation v. Bonta*,
    594 U.S. 595 (2021) .........................................................4, 9

*Ass'n of American Physicians & Surgeons, Inc. v. Texas Medical Board*,
    627 F.3d 547 (5th Cir. 2010) ..............................................5

*Ass'n of American Railroads v. Hudson*,
    144 F.4th 582 (4th Cir. 2025) ............................................5

*Bank of United States v. Deveaux*,
    9 U.S. 61 (1809) ................................................................16

*Beatty v. Kurtz*,
    U.S. (2 Pet.) 566....................................................14, 17

ii

*Brotherhood of Railroad Trainmen v. Virginia ex rel.*
*Virginia State Bar*,
377 U.S. 1 (1964) ......................................................................4

*Boston Parent Coalition for Academic Excellence Corp. v.*
*School Committee for City of Boston*,
89 F.4th 46 (1st Cir. 2023) ...................................................8

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ...........................................................15, 16

*Chamber of Commerce of U.S. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) ...........................................5

*Chancey v. May*,
24 Eng. Rep. 265 (Ch. 1722)................................................12

*Cockburn v. Thompson*,
33 Eng. Rep. 1005 (Ch. 1809)........................................12, 15

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ...............................................8

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
204 F.3d 149 (4th Cir. 2000) ...............................................5

*Gray v. Chaplin*,
57 Eng. Rep. 348 (Ch. 1825).................................................17

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) .............................................................10

*Hospital Council of Western Pennsylvania v. City of Pittsburgh*,
949 F.2d 83 (3d Cir. 1991).....................................................7

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ...............................................................6

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*,
   477 U.S. 274 (1986) ...............................................................5

*Labrador v. Poe ex rel. Poe*,
   144 S. Ct. 921 (2024) ............................................................7

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
   599 U.S. 382 (2023) ..............................................................1

*Leigh v. Thomas*,
   28 Eng. Rep. 201 (Ch. 1751).................................................12

*Louisville, Cincinnati & Charleston Railroad Co. v. Letson*,
   43 U.S. 497, 11 L. Ed. 353 (1844)..........................................16

*Make the Road New York v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020)..........................................9, 16

*Martin v. United States*,
   145 S. Ct. 1689 (2025) ...........................................................1

*Mi Familia Vota v. Fontes*,
   129 F.4th 691 (9th Cir. 2025).................................................8

*North Carolina State Conference of the NAACP v. Raymond*,
   981 F.3d 295 (4th Cir. 2020) ................................................5

*NAACP v. Button*,
   371 U.S. 415 (1963) ..............................................................4

*NCAA v. Califano*,
   622 F.2d 1382 (10th Cir. 1980) ............................................8

*Outdoor Amusement Business Ass'n, Inc. v. DHS*,
   983 F.3d 671 (4th Cir. 2020) ................................................7

*Parents Involved in Community Schools v. Seattle School District No. 1*,
    551 U.S. 701 (2007) ........................................................................7

*Payne v. Hook*,
    7 Wall 425 (1869)............................................................................10

*Pharmaceutical Researchers & Manufacturers of America v. Williams*,
    64 F.4th 932 (8th Cir. 2023)............................................................8

*Retail Industry Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ...........................................................6

*South River Watershed Alliance, Inc. v. Dekalb County*,
    69 F.4th 809 (11th Cir. 2023)..........................................................8

*Self-Insurance Institute of America, Inc. v. Korioth*,
    53 F.3d 694 (5th Cir. 1995) .............................................................8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) ........................................................................7

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ........................................................................6

*Trump v. CASA*,
    606 U.S. 831 (2025) ...................................................3, 9, 10, 16, 18

*United States v. Rahimi*,
    602 U.S. 680 (2024) ..................................................................18, 19

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022)..........................................................8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................6, 15

## Other Authorities

Robert G. Bone, *Personal and Impersonal Litigative Forms*,
70 B.U.L.R. 213 (1990) ............................................................. 11, 17

De Modo Decimandi, *Black's Law Dictionary* (12th ed. 2024) .............. 18

John Mitford, *A Treatise on the Pleadings in Suits in the Court of Chancery by English Bill* (1st ed. 1780) ......................................... 13

John Mitford, *A Treatise on the Pleadings in Suits in the Court of Chancery by English Bill* (2d ed. 1787) ......................................... 17

Norman Silber*, A Corporate Form of Freedom: The Emergence of the Modern Nonprofit Sector* (2001) ...................................................... 15

Joseph Story, *Commentaries on Equity Pleadings, and the Incidents Thereto, According to the Practice of the Courts of Equity of England and America* § 107 (2d ed. 1838) ......................... 13, 14, 16

Stephen C. Yeazell, *From Medieval Group Litigation to the Modern Class Action* (1987) ................................................................ 11, 15

## INTEREST OF AMICI CURIAE[1]

Amicus Curiae Public Citizen is a nonprofit consumer-advocacy organization with members in all 50 states. Public Citizen appears before Congress, administrative agencies, and courts to promote enactment and enforcement of laws protecting consumers, workers, and the public. Public Citizen has long sought to preserve and expand access to courts for individuals harmed by corporate or government wrongdoing, and to maintain the federal courts' authority to provide appropriate redress efficiently and effectively. In this regard, it often appears as amicus curiae to advocate for legal principles that minimize barriers to individuals' access to court remedies. *See, e.g.*, *Martin v. United States*, 145 S. Ct. 1689 (2025); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382 (2023). In addition, since its founding in 1971, Public Citizen has often filed suit as a plaintiff on behalf of its members, in particular in cases brought under the Administrative Procedure Act.

---

[1] No party's counsel authored this brief in whole or part, no party or party's counsel contributed money intended to fund the brief's preparation or submission, and no person other than amicus curiae, its members, or its counsel contributed money intended to fund the brief's preparation or submission.

Amicus Curiae Institute for Constitutional Advocacy and Protection is a nonpartisan, public-interest law group based at Georgetown University Law Center. ICAP's mission is to protect constitutional rights and hold our governmental institutions to the highest standards of integrity and accountability. ICAP has broad experience litigating civil-rights cases in federal and state courts throughout the United States. In addition, ICAP offers vital understandings of the Constitution and federal legislation that draw on scholarship and a wide range of practical experience, including its attorneys' extensive service in the federal government.

*Amici* submit this brief to address the scope of equitable relief available to members of associational plaintiffs who are not named parties in litigation and who have not submitted declarations establishing their individual standing. As explained below, consistent Supreme Court precedent and historical English equity practice both support extending relief to all injured members of an associational plaintiff, and nothing in *Trump v. CASA*, 606 U.S. 831 (2025) is to the contrary.

*Amici* are authorized to file this brief by Fed. R. App. P. 29(a)(2) because all parties have consented to its filing.

## INTRODUCTION

The Supreme Court has long recognized that an association may file suit as a plaintiff on behalf of its members if it satisfies three criteria, including that the participation of individual members is not necessary to the litigation. Here, though, in seeking to limit the scope of relief available in this case, the Government makes an argument that would always require participation of individual members of the Plaintiff associations before they could benefit from any remedy obtained by the association. If accepted, that argument would eliminate the efficiency and viability of associational plaintiffs.

Specifically, the Government argues that courts lack authority to extend injunctive relief to the members of associational plaintiffs, unless each member individually establishes standing. Although the Government relies on *Trump v. CASA*, 606 U.S. 831 (2025), that decision does not support their argument. In *CASA*, the Supreme Court reiterated the point that the remedy awarded in a given case should be no broader

than needed to provide full relief to the plaintiffs and declined to address the Government's arguments about associational standing.

In so doing, the Court explained that the scope of federal courts' equitable authority turns on what "relief was available in the High Court of Chancery in England at the time of the founding." *Id.* at 842. Yet in arguing for a major departure from longstanding precedent with respect to associational plaintiffs, the Government's brief is conspicuously silent on the historical inquiry. That history shows that, by the time of the founding, it was well established in English equity practice that voluntary associations could seek injunctive relief on behalf of all of their members, without the members becoming parties to or participating in the litigation. Thus here, the district court did not exceed its equitable authority by providing relief to all members of the Plaintiff associations.

## ARGUMENT

## I. The right of associations to seek injunctive relief on behalf of their members is well established.

Both corporate entities (such as the members of the U.S. Chamber of Commerce, the American Hospital Association, and the National Retail Federation) and individuals (such as the members of the NAACP, the American Medical Association, and the American Bar Association)

4

often join together to advance their shared goals. Such associations "have been at the heart of the American system of government and individual rights" since the Founding. *6th Cong. Dist. Republican Comm. v. Alcorn*, 913 F.3d 393, 401 (4th Cir. 2019); *accord, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021).

Of relevance here, group association enhances the ability of members to effectively "[r]esort to the courts to seek vindication of constitutional rights." *NAACP v. Button*, 371 U.S. 415, 443 (1963); *see id.* at 431 (noting that an "association for litigation may be the most effective form of political association"); *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (recognizing the First Amendment right to "associate together to help one another to preserve and enforce rights granted them under federal laws"). As the Supreme Court has long recognized, litigation brought on behalf of associations includes "special features, advantageous both to the individuals represented and to the judicial system as a whole." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 289 (1986) (noting associations often have "specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs

lack"). Thus, lawsuits brought by membership organizations, trade associations, and other groups on behalf of their members are common. *See, e.g.*, *Ass'n of Am. Railroads v. Hudson*, 144 F.4th 582 (4th Cir. 2025); *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295 (4th Cir. 2020); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000); *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547 (5th Cir. 2010); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742 (10th Cir. 2010); *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963 (8th Cir. 2016).

These groups have standing to bring claims on behalf of their members subject to three long-established conditions: (1) "one of the association's members would have standing" to sue in their individual capacity; (2) "the interests [the association] seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 345 (1977)). With respect to the first prong, the Supreme Court has repeatedly stated that, for an association to have standing, it need

6

only "establish[] that at least *one* identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *accord, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("The association must allege that its members, *or any one of them*, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." (emphasis added)).

Moreover, the Supreme Court and this Court have held that, where an association has standing on behalf of its members, it can obtain injunctive relief to benefit all of its affected members. *Warth*, 422 U.S. at 515 (stating that, if "the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured"); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 932 (2024) (Kavanaugh, J., concurring) (noting the "widespread effect" of an injunction issued to "an association that has many members"); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, 983 F.3d 671, 683 (4th Cir. 2020) (noting that "an injunction would benefit many of [the plaintiff's] members"); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist.*

*No. 1*, 551 U.S. 701, 718 (2007) (noting that the plaintiffs sought an injunction on behalf of members whose children may be "denied admission to the high schools of their choice when they apply for those schools in the future"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023) (noting that only four of the association's members had established that they had been denied admission to university). Likewise, the courts of appeals unanimously understand the Supreme Court's associational standing precedents as authorizing injunctions that reach unidentified members of plaintiff organizations. *See, e.g.*, *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991) (Alito, J.) ("The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members.").[2]

---

[2] *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 89 F.4th 46, 55 (1st Cir. 2023); *All. for Open Soc'y Int'l, Inc. v. USAID*, 651 F.3d 218, 229 (2d Cir. 2011), *aff'd* 570 U.S. 205 (2013); *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 695–96 (5th Cir. 1995); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022); *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011); *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 948 (8th Cir. 2023); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 709 (9th Cir. 2025); *NCAA v. Califano*, 622 F.2d 1382, 1392 (10th Cir. 1980); *S. River Watershed All., Inc. v. Dekalb County*, 69 F.4th 809, 820 (11th Cir. 2023);

## II. *CASA* supports application of the longstanding rule, founded on historical practice, that associations may seek injunctive relief on behalf of their members.

Despite this well-established precedent, the Government contends that, even where an association has established standing to bring a claim for relief on behalf of its members, an injunction can apply only to those members who *individually* establish their *own* standing. *See* Applt. Br. 60–63. Accepting the Government's approach would eviscerate associational standing, in defiance of the Supreme Court's longstanding endorsement. If individual members must each identify themselves and each individually prove their own standing to benefit from any injunctive or declaratory relief, a key advantage of associational litigation would be lost. Such a requirement would pose a particular hardship to members of associations "where proceeding as individuals would identify the plaintiffs to the government as targets of the very enforcement actions they challenge as unlawful." *Make the Rd. New York v. Wolf*, 962 F.3d 612, 628 n.9 (D.C. Cir. 2020); *accord, e.g.*, *Ams. for Prosperity Found.*, 594

---

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022).

U.S. at 606 (noting that association is particularly powerful when advocating for controversial or unpopular causes).

Moreover, the Government's argument for requiring declarations from every affected individual member rests entirely on *CASA*. *See* Applt. Br. 58–59. But nothing in *CASA* calls into doubt the longstanding precedent allowing associations to obtain relief on behalf of their members, or requires such participation by members. In *CASA*, the Court partially stayed a universal injunction that provided relief to non-parties who were *not* members of the plaintiff associations. At the same time, the Court allowed the injunction to remain in effect to the extent necessary to "provide complete relief to each plaintiff." *CASA*, 606 U.S. at 861. In a footnote, the Court declined to consider the Government's argument that a court lacked "authority to grant relief to the organizations' members who are not identified in the complaints." *Id.* at 838 n.2. And nothing in the Court's reasoning suggests the sea change in associational standing law that the Government puts forward in its papers. Rather, *CASA* reaffirmed that the scope of equitable relief available in federal courts today turns on the historical practice of English equity courts at the time of the founding. *See CASA*, 606 U.S. at 841.

10

While the Government's brief fails to discuss historical practice, it was well established by 1789 that English equity courts could award prospective affirmative relief to all members of an association, even if not all members were before the court. The Judiciary Act of 1789, which endowed federal courts with jurisdiction over "all suits … in equity," § 11, 1 Stat. 78, provides federal courts authority to issue equitable remedies. *CASA*, 606 U.S. at 841. The "equity jurisdiction conferred on the Federal courts" by the Judiciary Act "is the same that the High Court of Chancery in England possesse[d]" in 1789, *Payne v. Hook*, 7 Wall 425, 430 (1869), and it encompasses the remedies "'traditionally accorded by courts of equity' at our country's inception," *CASA*, 606 U.S. at 841 (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)).

Throughout the medieval period and well into the nineteenth century, the English Court of Chancery regularly heard representative suits brought by parties on behalf of or against numerous persons conceived of as a litigating entity. *See generally* Stephen C. Yeazell, *From Medieval Group Litigation to the Modern Class Action* (1987). By the seventeenth century, with the rise of the corporate entity as the principal

group litigant in common law courts, unincorporated groups of parishioners and copyholders were pushed towards litigating "predominantly in the Court of Chancery." Robert G. Bone, *Personal and Impersonal Litigative Forms*, 70 B.U.L.R. 213, 221 (1990); Yeazell, *supra*, at 125–31. In its role of handling matters in which "common-law procedure did not yield an acceptable result," the Court would "hear[] cases involving groups that had no corporate standing." Yeazell, *supra*, at 131. In fact, as the medieval norm of group litigation shifted, the Court of Chancery became the sole avenue of judicial relief for these unincorporated groups. "Beginning in the late sixteenth century … the only answer was Chancery." *Id.*

In a decision from 1722, for example, the Court of Chancery took it as well established that voluntary associations could "sue on behalf of themselves and all the rest … of the same undertaking" without "making all the members parties." *Chancey v. May*, 24 Eng. Rep. 265, 265 (Ch. 1722). A long line of cases involving representative parties followed, spanning over a century. *See Leigh v. Thomas*, 28 Eng. Rep. 201 (Ch. 1751) (noting that "one may bring a bill in behalf of himself and the rest, and they are ordered to come in under the decree"); *Adair v. New River*

12

*Plate Co.*, 32 Eng. Rep. 1153, 1158 (Ch. 1805) (explaining that "it is not necessary to bring all the individuals" for "a Court of Equity [to] give relief against the Defendants"); *Cockburn v. Thompson*, 33 Eng. Rep. 1005, 1008 (Ch. 1809) (allowing suit on behalf of association "[t]hough the Plaintiffs cannot bring forward all [five thousand] persons").

Reflecting on this line of representative suits, chancellors, commentators, and judges consistently singled out the voluntary association (alternatively, the "friendly" or charitable society) as a typical litigant. They recognized numerosity of membership as a feature of, not an impediment to, such suits. *Cockburn*, for instance, acknowledged that the party-specific general rule had to be dispensed with "in the case of a very numerous association in a joint concern." 33 Eng. Rep. at 1005. Likewise, in the first treatise on English equity practice—and the only such work extant at the time of the first Judiciary Act—John Mitford, Lord Redesdale, recognized that "[i]n some cases … where all the persons interested are not made parties, yet if there is such a privity between the plaintiffs and the defendants, that a complete decree may be made, the want of parties shall not be a cause of demurrer." John Mitford, *A Treatise on the Pleadings in Suits in the Court of Chancery by English*

*Bill* 52 (1st ed. 1780). To illustrate the point, Mitford noted that "if a bill is brought by a lord of a manor against some of the tenants, or by some of the tenants against the lord, upon a question of common; or by a parson for tithes against some of the parishioners; or by some of the parishioners against the parson, to establish a general modus … a demurrer, for want of the necessary parties, will not hold." *Id.* at 52–53.

Joseph Story, the father of modern American equity, also highlighted the voluntary association in his authoritative treatise on equity pleadings. He noted that where parties "form a voluntary association for public or private purposes … the persons interested are commonly numerous, and any attempt to unite them all in the suit would be, even if practicable, exceedingly inconvenient." Joseph Story, *Commentaries on Equity Pleadings, and the Incidents Thereto, According to the Practice of the Courts of Equity of England and America* § 107 (2d ed. 1838). "Under such circumstances, as there is a privity of interest, the Court will allow a Bill to be brought by some of the parties in behalf of themselves and all the others, taking care, that there shall be a due representation of all substantial interests before the Court." *Id.*

14

The U.S. Supreme Court embraced this strand of English equity practice in American law in its 1829 decision in *Beatty v. Kurtz*, 27 U.S. (2 Pet.) 566. There, an unincorporated voluntary association sought an injunction to maintain the use of a plot of land for religious purposes. *Id.* at 579–80. The Court explained that members "belonging to a voluntary society, and having a common interest, may sue in behalf of themselves and others having the like interest, as part of the same society; for purposes common to all, and beneficial to all." *Id.* at 585. Notably, the Court cited the 1787 second edition of Mitford's treatise as authority, *see id.* at 585 n.2, confirming that the Supreme Court in 1829 understood its holding on the proper parties to a suit in equity to be rooted in Founding-era practice, rather than any innovation in equity jurisprudence in the intervening years.

Because unincorporated group litigants could bring suit only in the Court of Chancery, not in common law courts, *see* Bone, *supra*, at 221, they were restricted to seeking and receiving prospective, equitable remedies. The availability of equitable relief was deemed "of high importance" and necessary for unincorporated group litigants precisely because, without it, "no law [could] be administered in any Court of

15

Justice among the members of such Societies." *Cockburn*, 33 Eng. Rep. at 1006. This distinction between prospective and retrospective legal action was crucial to the development of adjudicative litigation, Yeazell, *supra*, at 149, and remains salient today. *See Warth*, 422 U.S. at 515 (stating that associations may seek "a declaration, injunction, or some other form of prospective relief" and that, unlike monetary damages, which may be "peculiar to the individual member concerned" and would "require individualized proof," injunctive relief is presumed to "inure to the benefit of [association] members").

While modern associations are typically incorporated, *see generally* Norman Silber*, A Corporate Form of Freedom: The Emergence of the Modern Nonprofit Sector* (2001), taking corporate form does not negate an association's rights. *E.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014) ("A corporation is simply a form of organization used by human beings to achieve desired ends."); *Make the Rd. New York*, 962 F.3d at 628 ("Whether aggrieved individuals sue on their own or band together through a representative association does not change the nature of the lawsuit as seeking to remedy the individual members' injuries arising from the [challenged agency action]."). Indeed, the early practice

of federal courts was to look behind the corporate charter and treat the lawsuit as if it were brought by its members. *E.g.*, *Bank of United States v. Deveaux*, 9 U.S. 61, 82 (1809) (courts' jurisdiction depends on "the real persons who come into court, in this case, under their corporate name"), *overruled by Louisville, C. & C.R. Co. v. Letson*, 43 U.S. 497, 11 L. Ed. 353 (1844).

Importantly, the relief for associational members was not limited to the kind of "incidental" benefits for non-parties that the Supreme Court considered in *CASA*. 606 U.S. at 851 (discussing an order to abate a public nuisance, which incidentally benefits the public at large in the course of affording complete relief to a particular plaintiff). The Court of Chancery allowed absent members of the association to "come in under the decree, and take the benefit of it." Story, *Commentaries* § 96. The contours of this "enlarged remedial power" meant that a "favorable decree provided for all members at once" and heightened the possibility of "resolv[ing] the whole controversy with a representative suit, assuming … that the plaintiff prevailed." Bone, *supra*, at 247 n.77. Nevertheless, non-parties "who stand in the same relation with [the plaintiff] to the subject of the suit" were not necessarily bound by the

17

court's decree; instead, they were "at liberty to come in and take the benefit of the decree, or not, as they think proper." *Gray v. Chaplin*, 57 Eng. Rep. 348, 350 (Ch. 1825).

Early American equity practice was of a piece. Using language directly from the 1787 second edition of Mitford's treatise, the Supreme Court in *Beatty* cited the example of cases in which "some of the parishioners may sue a parson to establish a general modus, without joining all; and some members of a voluntary society or company, when the parties are very numerous, may sue for an account against others, without joining all." *Beatty*, 27 U.S. (2 Pet.) at 585 & n.2 (citing John Mitford, *A Treatise on the Pleadings in Suits in the Court of Chancery by English Bill* 145 (2nd ed. 1787)). The term "modus" in ecclesiastical law "refers to any special kind of tithing by custom that is different from the general law that usually required the tenth part of an annual increase." De Modo Decimandi, *Black's Law Dictionary* (12th ed. 2024). "For example, it could mean a twelfth part of a quantity of hay rather than a tenth part or a couple of hens instead of a normal tithing of eggs." *Id.* By citing the example of parishioners suing to establish a "general modus," then, the Court confirmed that equitable relief was available to all

members, even in cases where it would be possible to limit the relief to the particular members who were parties to the suit. That is, a court *could* provide full relief to individual parishioners who were parties to a case by permitting those individuals—but not non-party parishioners—to tithe a twelfth part of their hay rather than a tenth. But Founding-era English equity practice nonetheless permitted parishioners to sue as a group and allowed courts to award general equitable relief that benefited all parishioners.

That Founding-era practice is a direct historical analog to a modern grant of equitable relief to all members of an association, including members who are not named plaintiffs or who have not submitted individual declarations. That is all the Supreme Court's "historical analogue" test requires. *CASA*, 606 U.S. at 847; *cf. United States v. Rahimi*, 602 U.S. 680, 692 (2024) ("The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'").

19

## CONCLUSION

The district court acted within the scope of its equitable authority in extending injunctive relief to all members of the associational Plaintiffs.

Respectfully submitted,

/s/ Cormac Early

Joseph W. Mead
William Powell
Institute for Constitutional
   Advocacy and Protection
Georgetown Law
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-9765

Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae

September 26, 2025

**CERTIFICATE OF BAR MEMBERSHIP, WORD COUNT,**
**IDENTICAL COMPLIANCE OF BRIEFS, AND VIRUS CHECK**

1. I certify that I am a member of the bar of this Court.

2. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f) and the Rules of this Court, it contains 3,974 words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Century Schoolbook.

September 26, 2025                    /s/ Cormac Early
                                     Cormac Early

21

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, the foregoing brief has been served through this Court's electronic filing system upon counsel of record for all parties.

/s/ Cormac Early
Cormac Early