# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

PFLAG, INC., et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

## DEFENDANTS-APPELLANTS'
## PETITION FOR REHEARING EN BANC

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
ANDREW SHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7214*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND LOCAL RULE 40(B) STATEMENT ................. 1

STATEMENT ........................................................................... 3

ARGUMENT ........................................................................... 6

I.     The Universal Injunction Here Cannot Be Reconciled
with Multiple Intervening Precedents .............................. 6

II.    The Panel Erred on the Remaining *Nken* Factors ......... 17

CONCLUSION ...................................................................... 21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Anderson v. Crouch,*
169 F.4th 474 (4th Cir. 2026) ........................................... 6, 12, 13, 14

*Building & Constr. Trades Dep't v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) ..................................................... 8

*Bostock v. Clayton County,*
590 U.S. 644 (2020) ............................................................ 14

*CASA, Inc. v. Trump,*
763 F. Supp. 3d 723 (D. Md. 2025) ..................................... 16

*Chamber of Com. of the U.S. v. Lierman,*
151 F.4th 530 (4th Cir. 2025) ............................................ 15

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................ 17

*Martin v. Singletary,*
965 F.2d 944 (11th Cir. 1992) ............................................ 14

*National Ass'n of Diversity Officers in Higher Educ. v. Trump,*
167 F.4th 86 (4th Cir. 2026) .......................................... 5, 8, 9, 10, 17

*Reno v. Flores,*
507 U.S. 292 (1993) ............................................................ 10

*Sustainability Inst. v. Trump,*
165 F.4th 817 (4th Cir. 2026) ....................................... 1, 10, 11, 12

*Texas v. United States,*
523 U.S. 296 (1998) ............................................................. 7

*Trump v. American Fed'n of Gov't Emps.,*
145 S. Ct. 2635 (2025) ...................................................... 5, 9

*Trump v. Boyle,*
145 S. Ct. 2653 (2025) .......................................................... 9

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) .......................................... 1, 2, 3, 5, 15, 16, 17, 18

*United States v. Skrmetti*,
    605 U.S. 495 (2025) .............................................. 1, 5, 12, 13, 14, 15

*Zermeno-Gomez, In re*,
    868 F.3d 1048 (9th Cir. 2017) ......................................... 14

**Statutes:**

20 U.S.C. § 1681(a) ..................................................... 14

42 U.S.C. § 300w-7(a)(2) ......................................... 14

42 U.S.C. § 18116(a) ............................................. 14

**Regulatory Materials:**

2 C.F.R. § 200.340(a)(4) ................................................... 17

Exec. Order No. 14,168,
    *Defending Women from Gender Ideology Extremism
    and Restoring Biological Truth to the Federal Government*,
    90 Fed. Reg. 8615 (Jan. 30, 2025) ............................... 3, 7, 8

Exec. Order No. 14,187,
    *Protecting Children from Chemical and Surgical
    Mutilation*, 90 Fed. Reg. 8771 (Feb. 3, 2025) ........................ 3, 4, 8, 13

**INTRODUCTION AND LOCAL RULE 40(B) STATEMENT**

This case involves a universal injunction trapped in limbo. In March 2025, a district court entered a universal preliminary injunction prohibiting defendants from implementing two Executive Orders that direct federal agencies under the President's supervision to exercise their discretion, to the extent they may do so consistent with applicable law, to avoid the federal funding of gender ideology and specified sex transition interventions for children under age 19. In the intervening months, every aspect of the district court's reasoning—from its merits holdings to its universal relief—has been repudiated in a series of decisions by the Supreme Court and this Court, including *United States v. Skrmetti*, 605 U.S. 495 (2025), *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and *Sustainability Institute v. Trump*, 165 F.4th 817 (4th Cir. 2026).

In November 2025, shortly before the government's reply brief in the underlying appeal was due, a panel of this Court *sua sponte* placed the appeal in abeyance "pending a decision by this court in *Anderson v. Crouch*, No. 22-1927." ECF 111. After the Court's decision in *Anderson* issued on March 10, the government promptly moved to set a schedule

to complete briefing and hold oral argument. That motion was denied, so the government sought a stay of the preliminary injunction. A panel of this Court denied a stay without opinion. ECF 127. The plaintiff in *Anderson* has filed a petition for rehearing en banc, which remains pending. No. 22-1297, ECF 167.

The combined effect of these events, culminating in the panel's unexplained denial of a stay, is that a manifestly erroneous universal injunction remains unstayed with no end in sight. The government therefore seeks rehearing en banc of its request for a stay, which presents questions of exceptional importance. Every aspect of the district court's reasoning conflicts with binding precedent of the Supreme Court and this Court, and at a minimum, there is no warrant for a *universal* injunction to remain unstayed as it applies beyond the plaintiffs, given that a universal injunction by its very existence inflicts irreparable injury on "a coordinate branch of the Government" and therefore "is enough to justify interim relief." *CASA*, 606 U.S. at 859, 861-62 (quotation omitted).

Review of the stay request by the full court is thus necessary to prevent an "'improper[] intru[sion]' on 'a coordinate branch of the

Government,'" *CASA*, 606 U.S. at 859, from extending indefinitely based on legal theories that contravene both the Supreme Court and this Court's binding precedents. To prevent further delay in this already long-delayed case, and to allow the Solicitor General to determine whether relief from the Supreme Court is needed, defendants respectfully request a decision by May 29.

## STATEMENT

1. President Trump issued two Executive Orders at issue here shortly after he took office in January 2025. As relevant here, the "Defending Women EO" directs federal agencies to take necessary steps "as permitted by law" to assess grant conditions and grantee preferences to ensure that federal grant funds do not promote "gender ideology." Exec. Order No. 14,168, § 3(e), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615, 8616 (Jan. 30, 2025). The "Protecting Children EO" directs agencies that provide research or education grants to medical institutions to take appropriate steps "consistent with applicable law" to ensure that institutions receiving federal research or education grants end the "chemical and surgical

mutilation" of children, defined as including the use of "puberty blockers," "sex hormones," or "surgical procedures" in the treatment of gender dysphoria.  Exec. Order No. 14,187, §§ 2(c), 4, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771, 8771-72 (Feb. 3, 2025).

2.     Plaintiffs consist of six trans-identifying individuals, certain parents, and two organizations, PFLAG, Inc., and GLMA.  JA930-31. In support of plaintiffs' motion for preliminary injunction, six PFLAG members and four GLMA members submitted declarations.  JA377-409; JA411-21; JA445-53.  Plaintiffs facially challenge the portions of these Executive Orders concerning the funding of gender ideology and sex transition interventions.  JA925 n.6.  Plaintiffs alleged that the Executive Orders violated the separation of powers, the Equal Protection component of the Fifth Amendment, and the anti-sex-discrimination provisions of the Affordable Care Act (ACA) and the Public Health Service Act (PHSA), and sought a preliminary injunction. The district court entered a universal preliminary injunction on March

4, 2025, enjoining defendants from implementing these policy directives and denying the government a stay pending appeal. JA922-87. The government appealed the universal preliminary injunction. After the Supreme Court's decisions in *Skrmetti*, *CASA*, and *Trump v. American Federation of Government Employees* (*AFGE*), 145 S. Ct. 2635 (2025), and this Court's grant of a stay in *National Association of Diversity Officers in Higher Education v. Trump* (*NADOHE*), 167 F.4th 86, 102 (4th Cir. 2026), *see* ECF 122 at A7-A16, the government filed in the district court a motion to stay the injunction pending appeal on July 28, 2025.

3.    In the meantime, the government and plaintiffs submitted their merits briefs in this Court. On October 1, 2025, this Court stayed the briefing schedule in light of the lapse of appropriations to the Department of Justice. ECF 78. During the lapse, this Court tentatively calendared the case for oral argument during the Court's January 2026 sitting, ECF 82, and after appropriations were restored, the Court ordered the reply brief to be filed on December 8, 2025, ECF 101. On November 21, 2025, however, the Court *sua sponte* placed this

appeal "in abeyance pending a decision by this court in *Anderson v. Crouch*, No. 22-1927." ECF 111.

4. After this Court issued its decision in *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), the government moved to resume briefing and schedule oral argument in this Court's May 2026 sitting. ECF 116. This Court denied the motion, leaving this appeal in abeyance indefinitely. ECF 121.

On March 30, 2026, the government notified the district court of the government's intent to file a motion for a stay pending appeal in this Court. On April 1, the district court denied the stay motion. ECF 122 at A1-A6.

The government moved for a stay in this Court on April 3. ECF 122. A panel of this Court denied the motion without opinion on April 16. ECF 127.

## ARGUMENT

### I. The Universal Injunction Here Cannot Be Reconciled with Multiple Intervening Precedents

The panel's order denying a stay gave no explanation for its decision. But there can be no serious dispute that the government is likely to prevail on the merits, as every significant premise of the

district court's decision has been rejected by intervening precedent that would have likewise bound the panel here.

**A.** Take first plaintiffs' facial "separation of powers" claim. Plaintiffs assert that in carrying out the Executive Orders, agencies will in the future terminate or condition as-yet-unidentified grants in violation of as-yet-unidentified statutory authorities, and that the particular grants that are allegedly unlawfully terminated or conditioned would injure them by causing institutions at which they work or are patients to cease providing the particular interventions at issue here. And they term this a "separation of powers" claim on the theory that because the President is directing action for which agencies lack statutory authority, he necessarily impinges on the separation of powers.

That claim fails in multiple respects. To begin, it is unripe because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). The Executive Orders specifically direct agencies to act "as permitted by law," Defending Women EO § 3(e), and "consistent with applicable law," Protecting

7

Children EO § 4.  The President has authority to "instruct his agents to make funding decisions" based on "policy priorities," *NADOHE*, 167 F.4th 86, 101 (4th Cir. 2026), and in those circumstances an agency must carry out the order only to the extent permitted by law, *Building & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).  In addition, the Orders are not self-executing:  agencies must "take appropriate steps" to implement them and provide the President "a timeline for future action."  Protecting Children EO §§ 4, 9; *see* Defending Women EO § 7(a) (similar).

Thus, before any action could occur, the agency administering each grant would have to determine that terminating the grant was consistent with the applicable statutes, regulations, and grant terms. Plaintiffs' subjective fear that one or more of the defendant agencies here will make such a determination as to an institution at which they work or are a patient is no substitute for a concrete indication for a particular grant program that there will be a live controversy.  And that live controversy would not resemble the present lawsuit:  if an agency made such a determination for any individual grant or grant program, any legal challenge would center on whether the agency's assessment in

that regard was lawful.  There is thus no basis to assume that any particular unlawful action will flow from the Executive Orders—much less one that will affect plaintiffs.

The Supreme Court's decision in *AFGE*, 145 S. Ct. 2635 (2025), is instructive.  There, as here, the "relevant Executive Order direct[ed] agencies to plan" certain actions "consistent with applicable law."  *Id.* at 2635 (Sotomayor, J., concurring in the grant of stay).  In granting a stay, the Court's order explained that the Court "express[ed] no view on the legality of any [agency action] produced or approved pursuant to the Executive Order" because "the plans themselves" had not yet been implemented and thus were not before the district court.  *Id.* at 2635.  As Justice Sotomayor explained, at that "stage" the Court simply "ha[d] no occasion to consider whether" the agency actions "can and will be carried out consistent with the constraints of law."  *Id.* (Sotomayor, J., concurring in the grant of stay).  Although *AFGE* is an interim decision, it "informs" how this Court "should exercise its equitable discretion in like cases."  *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

This Court's decision in *NADOHE* is also on point.  There, a panel of this Court held that a challenge to a similar executive order was

9

unripe because the relevant provision involved only "intra-governmental" action that was not "certainly impending."  167 F.4th at 97 (quotation omitted).  Although *NADOHE* held that other provisions of that executive order were ripe for challenge, those provisions gave rise to a live controversy because the plaintiffs "had grants cancelled" based on them.  *Id.* at 98-99.  Under *NADOHE*, plaintiffs here—who are not even recipients of federal funding—cannot manufacture a live controversy before an agency has taken a specific step implementing the Executive Orders.

Even if ripe, plaintiffs' facial ultra vires claim fails.  To succeed on an ultra vires claim, plaintiffs would have to show that an agency would take "action entirely in excess of its delegated powers and contrary to a *specific prohibition* in [the] statute."  *Sustainability Inst. v. Trump*, 165 F.4th 817, 832 (4th Cir. 2026) (quotation omitted).  And plaintiffs' burden is even greater in this facial challenge:  they must demonstrate that there is *no* action that *any* agency could take that would not be contrary to some specific statutory prohibition.  *See Reno v. Flores*, 507 U.S. 292, 301 (1993) (explaining that a facial challenge requires

showing that "no set of circumstances exists" under which the Executive Orders would be valid (quotation omitted)).

The district court did not apply this standard, and plaintiffs have never argued they could meet it. Instead, the court treated plaintiffs' "separation of powers" claim as an equitable action to enjoin unconstitutional conduct not required to meet the ultra vires standard. But this Court's intervening precedent makes clear that it was mistaken. In *Sustainability Institute*, this Court explained that a claim is fundamentally statutory—and thus subject to ultra vires review— when plaintiffs "assert that because executive officials and agencies violated statutes, they also violated the Constitution." 165 F.4th at 831. That is precisely the case here: plaintiffs assert that any "freeze [or] termination" of grants based on the Executive Orders would be inconsistent with the statutes governing those grants and thus would "violate[] the Constitution's 'separation of powers' and the Presentment Clauses," which is fundamentally a statutory claim. *Id.* at 830. Because "Congress gave the Executive authority to issue grants," it is "demonstrably incorrect" for plaintiffs to characterize their lawsuit as

challenging the "absence of any statutory authority whatsoever." *Id.* at 832 (emphases and quotation omitted).

Plaintiffs have sought to distinguish *Sustainability Institute* on the ground that it involved challenges by grant recipients to the termination of specific grants. But that only underscores the remarkable nature of plaintiffs' premature challenge here. Given that an actual recipient of federal funds that has suffered an actual termination of grant funding is subject to the requirements governing ultra vires suits, there is no reason why plaintiffs here—who are not themselves grant recipients and have brought this suit based on speculation about future agency action inconsistent with the governing statutes—should be in any better position.

**B.** The Supreme Court's intervening decision in *United States v. Skrmetti* forecloses plaintiffs' constitutional and statutory discrimination claims. Under *Skrmetti*, the Executive Orders are subject to rational-basis review because they make classifications based on "age" and "medical use," not sex or transgender status. 605 U.S. 495, 511 (2025); *see Anderson v. Crouch*, 169 F.4th 474, 487-88 (4th Cir. 2026). Like the Tennessee law in *Skrmetti*, the Orders address specific

interventions (puberty blockers, sex hormones, and surgical procedures) for a particular medical use (treatment of gender dysphoria) in minors, and thus classify based on age and medical use. *See* 605 U.S. at 511-13.

The Executive Orders "clearly meet[]" rational basis review because they are rationally related to a legitimate governmental interest. *Skrmetti*, 605 U.S. at 522. Like the Tennessee legislature in *Skrmetti*, the Executive Orders note that sex transition interventions could lead to "irreversible" outcomes, "lifelong medical complications," and "sterilization" for minors. *Compare* Protecting Children EO § 1 (discussing President's findings), with *Skrmetti*, 605 U.S. at 516-17, 522-23 (discussing state's findings). The President also observed that sex transition interventions could cause "these vulnerable youths' medical bills [to] rise throughout their lifetimes," which the government has a legitimate interest in mitigating. Protecting Children EO § 1; *see Anderson*, 169 F.4th at 491-92. Thus, it was rational for the Executive Orders to direct agencies to take steps consistent with law to end federal funding for sex transition interventions.

*Skrmetti* also forecloses plaintiffs' statutory sex-discrimination claims, as this Court recently recognized in *Anderson*. The ACA

13

prohibits discrimination "on the basis of sex," *see* 42 U.S.C. § 18116(a) (incorporating standard from 20 U.S.C. § 1681(a)), and the PHSA prohibits discrimination "on the ground of sex," 42 U.S.C. § 300w-7(a)(2). In *Bostock v. Clayton County*, 590 U.S. 644 (2020), the Supreme Court explained in the analogous Title VII context that these statutes employ a "traditional but-for causation standard." *Id.* at 656. In applying that standard to the ACA and the PHSA here, this Court is "bound to follow the Supreme Court's instructions [in *Skrmetti*] about the correct way to apply *Bostock*." *Anderson*, 169 F.4th at 493.[1] Applying *Skrmetti*'s interpretation of *Bostock*, this Court held in *Anderson* that West Virginia's refusal to provide coverage for sex-change surgeries in its Medicaid plan "did not discriminate because of sex" because "a patient's diagnosis—not sex or transgender status—is the but-for cause of the ability or inability to obtain coverage under the plan." *Id.* So too here: "changing a minor's sex or transgender status

---

[1] Plaintiffs may observe that a rehearing petition is pending in *Anderson*. But *Anderson* is the law of this circuit *now*, regardless of a pending rehearing petition. *See, e.g., In re Zermeno-Gomez*, 868 F.3d 1048, 1052-53 (9th Cir. 2017) (decision is precedential before mandate issues); *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (same). This Court has not indicated when it will decide the rehearing petition in *Anderson*.

does not alter" the application of the Executive Orders, which are premised on medical use and age. *Skrmetti*, 605 U.S. at 520. Thus, the Executive Orders do not violate either the ACA or the PHSA's anti-sex-discrimination clauses.

**C.** At minimum, rehearing en banc is necessary to correct the universal aspect of the preliminary injunction, which flouts the holding of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). *CASA*, which also considered a stay request, held that "the universal injunction … falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at 847; *see Chamber of Com. of the U.S. v. Lierman*, 151 F.4th 530, 543 (4th Cir. 2025) ("[T]he universal injunction … falls outside the bounds of a federal court's equitable authority." (quoting *CASA*, 606 U.S. at 847)). And contrary to the district court's understanding, the Supreme Court highlighted that it is "wrong to characterize the universal injunction as simply an application of the complete-relief principle." *CASA*, 606 U.S. at 852.

*CASA* makes clear that the governing principle is that "courts generally 'may administer complete relief *between the parties*.'" 606 U.S. at 851. That principle applies straightforwardly here: the

individual plaintiffs, as well as the members of PFLAG and GLMA who submitted declarations, specifically identified medical institutions at which they receive or provide interventions covered by the Executive Orders. JA49-51; JA377-409; JA411-16; JA418-21; JA423-29; JA445-48; JA450-53. Those injuries would be fully remedied by an injunction that barred application of the Executive Orders to the identified institutions. Enjoining the government from acting as to other similarly situated institutions or entities to which plaintiffs have identified *no* connection "would not render [plaintiffs'] relief any more complete," and the district court's injunction is thus overbroad. *CASA,* 606 U.S. at 853.

Plaintiffs have sought to defend the injunction on the ground that the plaintiff organizations have members nationwide. But that was exactly the ground on which the district court in *CASA* granted a preliminary injunction, which the Supreme Court stayed. *See CASA, Inc. v. Trump,* 763 F. Supp. 3d 723, 746 (D. Md. 2025). Plaintiffs have also suggested that a universal injunction is necessary because they might eventually seek the interventions at issue here from a different medical provider, but such "'some day' intentions" are insufficient to

16

establish standing, much less an injury warranting universal relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *see CASA*, 606 U.S. at 861 (court may, at most, "provide complete relief to each plaintiff with standing to sue").

## II. The Panel Erred on the Remaining *Nken* Factors

Although there is no indication of whether or how the panel weighed the other equitable factors governing the grant of a stay, it is plain that those factors would likewise support a stay. The Supreme Court has held that a universal injunction by its nature imposes irreparable harm because it "prevents the Government from enforcing its policies against nonparties," and this alone "justif[ies] interim relief." *CASA*, 606 U.S. at 859. Thus, at the very least, the government has established irreparable harm based on the district court's ongoing, perpetual universal injunction. And the irreparable harm goes beyond just the injury inflicted by an injunction that exceeds the district court's authority: the injunction also directly intrudes upon the President's authority to "determine his policy priorities and instruct his agents to make funding decisions based on them." *NADOHE*, 167 F.4th at 101 (citing 2 C.F.R. § 200.340(a)(4)).

The passage of time since the universal preliminary injunction was issued last March only underscores the irreparable harm here. The particular harms inflicted by this injunction—both in intruding on the operations of "a coordinate branch of the Government" and in fundamentally exceeding the district court's remedial power—have persisted far too long and continue to persist with each passing day. *CASA*, 606 U.S. at 859-60 (quotation omitted). There is no principle of adverse possession that allows a district court to engage in that intrusion indefinitely after some unspecified time has passed from the initial entry of an injunction.

Here, moreover, the particular need for a stay is driven by the confluence of events that have left the government with no prospect of timely relief from this erroneous injunction. Although the Court has issued its decision in *Anderson*—itself only the most recent in a series of decisions undermining the district court's reasoning—the appeal is presently in indefinite abeyance on this Court's own motion, and the Court has denied the government's motion to resume briefing and set the case for argument. This Court is certainly free to control its docket and the disposition of its cases in an orderly manner, and the

government has sought to respect this Court's judgment about the ordering of cases. But the current course—under which the government continues to suffer harms inflicted by an indefinite delay in resolving this long-pending preliminary injunction appeal—is not sustainable, particularly given that intervening legal developments have made clear that the injunction was erroneous from the start. A stay should issue now, rather than allowing this erroneous injunction to remain in place for potentially many more months.[2]

Plaintiffs' observation that the government did not seek a stay from the Ninth Circuit in a different case challenging the same Executive Orders, ECF 125 at 7 n.4, only underscores the remarkable posture of this case. The injunction at issue in the case before the Ninth Circuit is limited to the plaintiffs in that case, unlike the universal injunction here. And unlike this indefinitely-abeyed appeal in

---

[2] Plaintiffs are also likely to reference the government's statement in March 2025 that it was "not planning to seek a stay of the [injunction] as things currently stand, but we'd reserve the right to seek a stay depending on any subsequent orders." D. Ct. ECF 155-2, at 1. As the foregoing makes clear, the steady stream of precedent undermining every aspect of the district court's injunction, as well as the indefinite delay in resolving this appeal, has plainly changed where "things … stand" in this case. *Id.*

which briefing is not yet complete—and a definitive resolution is nowhere in sight—the Ninth Circuit held oral argument two months ago, and is thus poised to decide the case.

By contrast, plaintiffs will not experience irreparable harm from a stay.  Nothing suggests that if the status quo were restored, agencies would implement the Orders in a way that would cause *all* medical providers in the country—regardless of whether they receive federal funding—to cease providing sex transition interventions to plaintiffs. And to the extent plaintiffs have had to relocate or find care *after* the Executive Orders were enjoined, a stay would not impose irreparable harm because plaintiffs' inability to access care in those situations would not be traceable to the Orders.

## CONCLUSION

This Court should grant rehearing en banc and stay the preliminary injunction.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD

*/s/ Andrew Shi*
ANDREW SHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7124*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*
  *Andrew.Shi@usdoj.gov*

May 2026

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,800 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Andrew Shi*
Andrew Shi