UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 25-1279
(8:25-cv-00337-BAH)

———————————

PFLAG, INC.; AMERICAN ASSOCIATION OF PHYSICIANS FOR HUMAN
RIGHTS, INC., d/b/a GLMA: Health Professionals Advancing LGBTQ Equality;
GABE GOE, by and through his parent and next friend George Goe; GEORGE
GOE; BELLA BOE, by and through her parent and next friend Bruce Boe;
BRUCE BOE; CAMERON COE, by and through their parent and next friend
Claire Coe; CLAIRE COE; ROBERT ROE, by and through his parent and next
friend Rachel Roe; RACHEL ROE; LAWRENCE LOE; DYLAN DOE

     Plaintiffs - Appellees

v.

DONALD J. TRUMP, in his official capacity as President of the United States;
UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES;
HEALTH RESOURCES AND SERVICES ADMINISTRATION; DIANA
ESPINOSA, in her official capacity as Principal Deputy Administrator of the
Health Resources and Services Administration; NATIONAL INSTITUTES OF
HEALTH; MATTHEW J. MEMOLI, in his official capacity as Acting NIH
Director; NATIONAL SCIENCE FOUNDATION; SETHURAMAN
PANCHANATHAN, in his official capacity as Director of the National Science
Foundation; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of
the U.S. Department of Health and Human Services

     Defendants - Appellants

and

STATE OF WEST VIRGINIA

        Defendant

------------------------------

DETRANSITIONERS; THE CATHOLIC HEALTH CARE LEADERSHIP ALLIANCE; THE CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; THE NATIONAL CATHOLIC BIOETHICS CENTER; THE CATHOLIC MEDICAL ASSOCIATION; THE NATIONAL ASSOCIATION OF CATHOLIC NURSES, USA; AMERICAN COLLEGE OF PEDIATRICIANS; DO NO HARM, INC.; STATE OF ALABAMA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IDAHO; STATE OF INDIANA; STATE OF IOWA; STATE OF KANSAS; STATE OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF MISSOURI; STATE OF NEBRASKA; STATE OF NORTH DAKOTA; STATE OF OHIO; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF UTAH; STATE OF VIRGINIA; STATE OF WEST VIRGINIA; STATE OF WYOMING

        Amici Supporting Appellants

CONSTITUTIONAL ACCOUNTABILITY CENTER; PUBLIC CITIZEN; INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION; CLINICAL PRACTICE GUIDELINE EXPERTS; AMERICAN ACADEMY OF PEDIATRICS AND ADDITIONAL NATIONAL AND STATE MEDICAL AND MENTAL HEALTH ORGANIZATIONS; MASSACHUSETTS, 18 OTHER STATES, AND THE DISTRICT OF COLUMBIA

        Amici Supporting Appellees

_____

## O R D E R
_____

The court denies the petition for rehearing en banc. No judge requested a poll under Fed. R. App. P. 40 on the petition.

Entered at the direction of the panel: Judge King, Judge Agee, and Judge Benjamin.  Judge Benjamin filed a concurring opinion, in which Judge King joined.

For the Court

/s/ Nwamaka Anowi, Clerk

DEANDREA GIST BENJAMIN, Circuit Judge, with whom Judge KING joins, concurring:

The Government asked this court for the extraordinary remedy to stay a district court's preliminary injunction over a year after the injunction had been in place. During that one-year period, the Government repeatedly declined to seek interim relief from this court despite having multiple opportunities to do so under the federal appellate rules. The Government's inexplicable delay and related litigation conduct preclude any finding of irreparable harm, a required element for obtaining a stay of an injunction pending appeal.

A panel of this court previously denied the Government's motion to stay the district court's preliminary injunction. Today, this court denies the Government's petition to rehear the motion en banc. I write to explain my vote denying the Government's motion to stay.

I.

On March 4, 2025, the district court issued a preliminary injunction prohibiting the Government from "conditioning, withholding, or terminating federal funding" for any healthcare entity or medical provider based on the entity or provider's provision of "gender-affirming care for patients under nineteen" pursuant to Section 3(g) of Executive Order No. 14,168, *Defending Women from Gender*

*Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025) and Section 4 of Executive Order No. 14,187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771. Order Granting Plaintiffs' Motion for Preliminary Injunction (D. ECF No. 116) at 1–2.[1]  When the district court issued the preliminary injunction, it also denied the Government's request to stay the preliminary injunction pending appeal. Memorandum Opinion on Motion for Preliminary Injunction (D. ECF No. 115) at 65–66.

Under Federal Rule of Appellate Procedure 8, a party may move in the court of appeals for a stay pending appeal after first seeking that relief in the district court and the district court either "denied the motion or failed to afford the requested relief."  Fed. R. App. P. (8)(a)(2)(ii).

Despite the district court's denial of the Government's initial request to stay, the Government did not seek a stay of the preliminary injunction in this court as it was permitted to do under Rule 8.  Instead, the Government represented to plaintiffs that it would not request another stay of the preliminary injunction.  Exhibit to Plaintiffs' Response in Opposition to Government's Motion for Stay Pending Appeal (D. ECF No. 155-2) at 2 ("We understand that [the Department of Justice]

---

[1] Page numbers for citations to ECF documents utilize the page numbers in the blue or red headers on each document.

is not planning to seek a stay of the [preliminary injunction] as things currently stand, but we'd reserve the right to seek a stay depending on any subsequent orders."). Based on that representation, the parties jointly moved to stay certain district court deadlines pending appeal, and the district court granted that request.

Four months later, on July 28, 2025, the Government reversed course and returned to the district court to request a stay for a second time. Government's Motion for Stay Pending Appeal (D. ECF No. 151). The Government requested the district court to stay the preliminary injunction pending appeal or, in the alternative, stay the preliminary injunction to the extent the injunction extends beyond the named plaintiffs and those members of the organizations who have submitted declarations establishing their standing. *Id.* This second motion to stay principally relied on intervening decisions that the Government contended strengthened its likelihood of success on the merits. *Id.* at 3–11. Notably, those decisions were issued weeks and months before the Government filed its second motion to stay.[2]

---

[2] Specifically, the Government cited (1) *Trump v. American Federation of Government Employees (AFGE)*, 145 S. Ct. 2635 (2025) (mem.); (2) *National Ass'n of Diversity Officers in Higher Education (NADOHE) v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29; (3) *Trump v. CASA, Inc.*, 606 U.S. 831 (2025); and (4) *United States v. Skrmetti*, 605 U.S. 495 (2025). Government's Motion for Stay Pending Appeal (D. ECF. No. 151-1) at 3–11. The *AFGE* decision was issued on July 8, 2025, almost three weeks before the Government filed its second motion to stay; the *NADOHE* order was issued on March 14, 2025, over four months before the Government filed its second motion to stay; the *CASA* opinion was issued on June 27, 2025, a month before the Government filed its second motion to stay; and

The Government's second motion to stay sat pending for eight months. While the motion was pending, the Government, again, could have sought relief in this court under Rule 8. *See* Fed. R. App. P. 8(a)(2)(A)(ii) (allowing party to move for stay in appeals court if a district court "fail[s] to afford the requested relief"); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.5 (9th Cir. 2020) (entertaining a stay motion even though the district court had not yet ruled and finding that a delay of three weeks was sufficiently long to fall under Rule 8(a)(2)(A)(ii)).

During that eight-month period, briefing on the merits continued in the underlying appeal. Shortly before the Government's reply brief was due, this court *sua sponte* placed the merits appeal in abeyance "pending a decision by this court in *Anderson v. Crouch*, No. 22-1927." Order Placing Appeal in Abeyance (ECF No. 111). After this court issued its decision in *Anderson*, the Government moved to set a schedule to complete briefing and to hold oral argument, which the court denied on March 23, 2026.

Only then—eight months after filing its second motion to stay in the district court and over a year after the district court issued its preliminary injunction—did the Government indicate that it intended to seek a stay of the district court's preliminary injunction in this court. The Government did so by filing a notice of

---

the *Skrmetti* opinion was issued on June 18, 2025, over a month before the Government filed its second motion to stay.

supplemental authority in the district court.  Government's Notice of Supplemental

Authority (D. ECF. No. 164).  The notice stated that if the district court did not rule

on the Government's pending motion to stay by April 2, 2026, the Government

would seek relief from this court.  *Id.* at 1–2.  Like the second motion to stay, the

notice of supplemental authority cited decisions that the Government believed

favored its merits position.  *Id.*  And also like in the second motion to stay, the cited

decisions were issued weeks and months before the notice of supplemental authority

was filed.[3]

On April 1, 2026, the district court denied the Government's second motion

to stay, concluding that the Government's "delay in seeking a stay belie[d] [its] claim

of irreparable harm."  Order Denying Motion for Stay Pending Appeal (D. ECF No.

166) at 3.

At last, on April 3, 2026, over a year after the preliminary injunction was

---

[3] Specifically, the notice cited (1) *Sustainability Inst. v. Trump*, 165 F.4th 817, 830–32 (4th Cir. 2026); (2) *Solutions in Hometown Connections v. Noem*, 165 F.4th 835, 844 (4th Cir. 2026); (3) *National Ass'n of Diversity Officers in Higher Educ. (NADOHE) v. Trump*, 167 F.4th 86, 101-02 (4th Cir. 2026); (4) *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026). D. ECF 164-1 at 2.  The *Sustainability Institute* opinion was issued on January 21, 2026, three months before the Government filed the notice of supplemental authority; the *Hometown Connections* opinion was issued on January 23, 2026, more than two months before the Government filed the notice of supplemental authority; the *NADOHE* opinion was issued on February 6, 2026 almost two months before the Government filed the notice of supplemental authority; and the *Anderson* opinion was issued on March 10, 2026, almost three weeks before the Government filed the notice of supplemental authority.

issued, the Government moved in this court to stay the district court's order pending appeal. For irreparable harm, the Government took issue with the injunction's universal nature and argued that the injunction exceeds the district court's authority and improperly prevents the Government from enforcing its policies against nonparties. The Government further argued that the injunction directly intrudes upon the President's authority to determine his policy priorities and instruct his agents to make funding decisions based on those priorities.

A panel of this court denied that motion to stay. Order Denying Motion to Stay Pending Appeal (ECF No. 127).

## II.

A stay pending appeal is an "extraordinary" remedy. *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers); *see also Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). It is "an exercise of judicial discretion," the propriety of which "is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). Our discretion to issue this extraordinary remedy is guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are the "most critical." *Id.* at 434. And a showing of irreparable injury is necessary for a stay. *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 64 (D.C. Cir. 2024).

This "threshold showing" of irreparable harm is necessary "regardless of the petitioner's proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (internal citations omitted); *accord Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring) ("If the moving party has not demonstrated irreparable harm, then this Court can avoid delving into the merits."); *Transcon. Gas Pipe Line Co., LLC v. Pennsylvania Envtl. Hearing Bd.*, 108 F.4th 144, 151 (3d Cir. 2024) ("[I]f there is . . . an absence of an irreparable harm, then an analysis of the remaining considerations is unnecessary."). "[S]imply showing some possibility of irreparable injury is insufficient." *Doe #1*, 957 F.3d at 1058–59 (quoting *Nken*, 556 U.S. at 434). Instead, a movant must "show[] that irreparable injury is likely to occur during the period before the appeal is decided." *Id.* at 1059.

The Government cannot make the threshold showing of irreparable injury here because (A) it unreasonably delayed in seeking a stay of the preliminary injunction in this court and (B) it conducted the litigation in a manner inconsistent

10

with its plea of irreparable injury.

A.

A party's delay in seeking a stay implies a lack of irreparable injury.  *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) ("The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm."); *see also Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (Per Curium) ( "[A] party requesting a preliminary injunction must generally show reasonable diligence.").  That is so because the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief."  *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (internal citations omitted); *accord Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) ("[I]t is true that delay in seeking preliminary relief cuts against finding irreparable injury.").

An unreasonable delay alone may be a sufficient ground to deny a stay.  *See Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995); *see, e.g.*, *Ng. v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 997–99 (8th Cir. 2023).  The key question is "whether the delay was reasonable" or instead "a decision by the party to sit on its rights."  *Fish*, 840 F.3d at 753 (internal citations omitted).

The Government's delay here was unreasonable and clearly a decision to sit

11

on its rights. After the district court denied a stay on March 4, 2025, the Government waited more than a year before seeking relief in this court, even though Rule 8 authorized it to do so *that day*. In addition to waiting, the Government represented that it did not intend to seek a stay in this court, a representation that premised the parties' joint motion to pause the district court proceedings. And even after reversing course and filing its second stay motion in July 2025, the Government allowed that motion to remain pending for more than eight months without seeking appellate intervention, even though Rule 8 authorized the Government to file a motion in this court once the district court failed to act. The Government's failure to seek relief when Rule 8 permitted it do so and its representation that it would not seek a stay reflect an intentional decision to sit on its rights.

The Government's delay and inaction stand in stark contrast to the government's actions in other executive order and federal funding related cases, *Sustainability Institute* and *NADOHE*. In *Sustainability Institute*, the district court entered an injunction and denied the government's stay request in the same order. The government filed its notice of appeal the very next day and then moved for a stay in this court the day after that. Likewise, in *NADOHE*, the government filed a notice of appeal within days of the preliminary injunction, sought a stay in the district court the next day, and promptly moved for a stay in this court after the district court denied relief. Although the district court here entered the preliminary injunction on

March 4, 2025, the Government did not file its notice of appeal until twenty days later on March 24, 2025. The Government then waited another four months before filing its second motion to stay. It then allowed its second motion to stay to languish for eight additional months and, in total, waited more than a year before seeking relief from this court. The Government's markedly different litigation conduct here shows that the Government made a deliberate decision not to seek appellate relief in this case.

The Government seems to offer three reasons to excuse its delay, but none are persuasive.

First, the Government argues that any delay in seeking a stay was attributable to circumstances outside its control, namely the district court's failure to rule on the Government's second stay motion for more than eight months and this court's decision to hold the merits appeal in abeyance pending *Anderson*. But neither circumstance prevented the Government from seeking relief in this court. The Government was not required to wait for the district court to rule on its second stay motion before seeking appellate relief. As explained above, Rule 8 authorizes a stay motion where the district court has "failed to afford the relief requested," Fed. R. App. P. 8(a)(2)(A)(ii), and courts have found that even a matter of weeks may suffice, *Al Otro Lado*, 952 F.3d at 1006 n.5. Nor did the abeyance of the merits appeal impair the Government's ability to seek a stay in this court. The very purpose

of a stay pending appeal is to preserve the status quo while the appeal remains pending. *See Nken*, 556 U.S. at 429. An appeal held in abeyance is still an appeal pending before the court. The appeal's abeyance therefore provided no justification for the Government's decision to wait more than a year after the entry of the preliminary injunction before seeking appellate relief.

Second, the Government repeatedly points to intervening legal developments that purportedly undermine the district court's injunction. But the Government fails to note that the decisions on which it now principally relies were all issued well before it sought relief in this court: *CASA* was issued on June 27, 2025, *Sustainability Institute* was issued on January 1, 2026, and *NADOHE* was issued on February 6, 2026, yet the Government waited until July 28, 2025 to file its second stay motion in the district court and until April 3, 2026 to seek a stay from this court. Moreover, the Government's timing strongly suggests that what changed was not the existence of irreparable harm, but rather the Government's assessment of its likelihood of success on the merits.[4]

---

[4] This is perhaps the largest conceptual issue with Government's stay request. The Government argues that intervening precedent strengthening its merits position is dispositive of its stay request. But whatever force those merits arguments may ultimately have, they do not relieve the Government of its independent obligation to establish irreparable injury as a prerequisite for stay relief. *See KalshiEX*, 119 F.4th at 63–64 ("While the question on the merits is close and difficult, the [movant] cannot obtain a stay at this time because it has not demonstrated that it or the public will be irreparably harmed while its appeal is heard."). That independent requirement follows from the nature and purpose of interim relief like a stay. A stay

14

pending appeal is not a mechanism for revisiting the correctness of the underlying decision. It is an extraordinary remedy designed to preserve the appellate court's ability to provide meaningful relief while the ordinary appellate process unfolds. *See Nken*, 556 U.S. at 429 ("A stay simply 'suspend[s] judicial alteration of the status quo.'" (alteration in original) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers))); *id.* at 432 ("The authority to grant stays has historically been justified by the perceived need 'to prevent irreparable injury to the parties or to the public' pending review." (quoting *Scripps-Howard v. FCC*, 316 U.S. 4, 9 (1942))). As commentators have explained, interim relief exists to preserve the court's remedial options pending appellate review, not to collapse emergency proceedings into premature merits adjudications. *See, e.g.*, Jill Wieber Lens, *Stays of Injunctive Relief Pending Appeal: Why the Merits Should Not Matter*, 43 Fla. St. U. L. Rev. 1319, 1320–21 (2016) (explaining that stays preserve the usefulness of appellate review because "[o]nce the egg is scrambled, even a mighty appellate court can't unscramble it"); Samuel L. Bray, *The Purpose of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 812–13 (2025) (criticizing the collapse of equitable interim relief into a "one-factor test" dominated by merits predictions and emphasizing that interim relief exists to preserve the court's remedial options); William Baude, *The Interim Docket*, 94 U. Chi. L. Rev. (forthcoming 2027) (writing on the Supreme Court's "interim docket," also known as the "shadow docket" or "emergency docket," and explaining that the interim docket is ancillary to the Supreme Court's merits docket and should not be a vehicle for routine error correction). Indeed, interim relief requires courts to tolerate the risk that the ultimately "better" view of the merits may temporarily go unenforced because the more important question at the emergency stage is whether immediate intervention is necessary to prevent irreparable injury before appellate review. *See NetChoice, LLC v. Fitch*, 145 S. Ct. 2658 (2025) (Kavanaugh, J., concurring in the denial of the application to vacate stay) (concurring in the denial of an "application for interim relief" because even though the applicant had "demonstrated that it is likely to succeed on the merits," it had not "sufficiently demonstrated that the balance of harms and equities favors it at this time"); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301 (2014) (Roberts, C.J., in chambers) (denying application to recall and stay the Federal Circuit's mandate where the applicant had not shown a "likelihood of irreparable harm from denial of a stay," despite concluding that the applicant had "shown a fair prospect of success on the merits"); *Graddick v. Newman*, 453 U.S. 928, 933 (1981) (Powell, J., in chambers) (denying an application for stay where the applicants failed to show a threat of irreparable injury, despite acknowledging that the application "raised interesting and substantial questions on the merits"). Accordingly, even assuming the Government may

Third, the Government argues that the "passage of time" since the injunction was issued "only underscores the irreparable harm" and that the injunction has "persisted far too long." Government's Petition for Rehearing En Banc (ECF No. 128) at 22. The Government laments that it "has no control over the fact that the underlying appeal on the merits is in abeyance indefinitely, intruding on the President's authority to direct his subordinates with every passing day." Government's Reply in Support of Motion to Stay Pending Appeal (ECF No. 126) at 22; *see also* ECF No. 128 at 22 ("[T]he particular need for a stay is driven by the confluence of events that have left the government with no prospect of timely relief from this erroneous injunction.") But that argument ignores the fact that the Government itself repeatedly chose not to seek available relief. If the injunction inflicts the sort of irreparable institutional injury the Government now claims, that injury also existed in March 2025, in July 2025, and throughout the many months that followed. The Government nevertheless chose not to seek relief from the injunction in this court during that period. A party that repeatedly declines to seek available relief cannot plausibly characterize the same alleged injury as suddenly urgent and irreparable more than a year later.

---

ultimately prevail on the merits here, that does not excuse its failure to establish the separate and indispensable requirement of irreparable harm.

A party's litigation conduct can also indicate a lack of irreparable injury. *See West Virginia v. B.P.J., by Jackson*, 143 S. Ct. 889 (2023) (Alito, J., dissenting) ("[I]t is a wise rule in general that a litigant whose claim of urgency is belied by its own conduct should not expect discretionary emergency relief from a court."). For example, consenting to a stay or declining to seek expedited review on appeal, when unexplained, undercuts a claim of irreparable injury. *Hanson v. D.C.*, 120 F.4th 223, 245–46 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025).

The Government's litigation conduct here is inconsistent with its claim of irreparable injury. After the district court entered the preliminary injunction and denied a stay pending appeal, the Government expressly represented that it was "not planning to seek a stay of the [preliminary injunction] as things currently stand." D. ECF No. 155-2 at 2. Based on that representation, the parties jointly sought and obtained a pause in the district court proceedings pending appeal. The Government then allowed the injunction to remain in effect for months before reversing course and filing its second stay motion. This conduct clearly belies any claim of urgency.

The Government attempts to minimize its representation that it did not intend to seek a stay by emphasizing that it "reserve[d] the right to seek a stay depending on any subsequent orders." ECF No. 128 at 19 n.2. According to the Government, "the steady stream of precedent undermining every aspect of the district court's

injunction" later changed where "things stand." *Id.* But that argument does not show that the Government faces irreparable injury. In fact, the Government's argument confirms that what changed was not the threat of irreparable injury, but its perception that subsequent precedent improved its merits position.[5]

The Government's conduct in related litigation reinforces the point. In *Washington v. Trump*, No. 25-1922 (9th Cir.), another district court enjoined the same executive orders and denied a stay, yet the government has not sought a stay of the injunction from the Ninth Circuit.

The Government attempts to distinguish its actions in *Washington* by noting that the injunction there is limited to the plaintiffs in that case and that the merits appeal has progressed further than the appeal here. But those distinctions do not explain how the Government is irreparably injured here and not in *Washington*. The Government argues that the injunction here causes irreparable harm because it interferes with the President's authority to direct executive agencies and make funding decisions consistent with his policy priorities. If the injunction truly inflicts that sort of irreparable injury, those harms would exist regardless of whether the injunction is nationwide or plaintiff-specific and regardless of the procedural posture

---

[5] As discussed above in footnote 4, the Government's arguments that intervening precedent has strengthened its merits position does not relieve the Government from establishing the separate and independent *Nken* factor of irreparable injury.

18

of the underlying appeal.  The Government's selective pursuit of a stay demonstrates that its request to stay the district court's preliminary injunction here is not a response to irreparable injury.

III.

Accordingly, I believe the Government's own delay and litigation conduct foreclosed any credible showing of irreparable harm and voted to deny the Government's motion for a stay pending appeal for that reason alone.